IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PATRICK BRYANT, M07513, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 24-cv-02479-SMY |
| ) | |
| ANTHONY WILLS, ) | |
| C/O WILSON, ) | |
| C/O DELANEY,[1] ) | |
| MORGAN GIACOMO, ) | |
| C/O JOHN DOE 1, ) | |
| and C/O JOHN DOE 2, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

**YANDLE, District Judge:**

Plaintiff Patrick Bryant, an inmate in the custody of the Illinois Department of Corrections (IDOC) currently incarcerated at Menard Correctional Center, filed this action pursuant to 42 U.S.C. § 1983 for alleged constitutional deprivations arising from his attack by four inmates and subsequent denial of medical treatment at Menard. (Doc. 12). He seeks monetary and injunctive relief.[2] *Id*. The Complaint is subject to screening under 28 U.S.C. § 1915A, which requires this Court to dismiss any portion that is legally frivolous or malicious, fails to state a claim, or seeks money damages from an immune defendant.

**The Complaint**

Plaintiff makes the following allegations in the Complaint (Doc. 1, pp. 1-21): Plaintiff was

---

[1] The Clerk's Office is **DIRECTED** to **UPDATE** the spelling of "C/O Deliane" to "C/O Delaney" in CM/ECF consistent with all references to this defendant in the body of the Complaint.

[2] Plaintiff mentions Fed. R. Civ. P. 65 and "injunctive relief" in his Complaint. *See* Doc. 1, pp. 9-10. Beyond using these words, he makes no request for actual injunctive relief. If he requires interim injunctive relief, Plaintiff may file a Motion for Temporary Restraining Order and/or Preliminary Injunction under Rule 65(a) or (b) at any time during the pending action. He should include an affidavit that states the exact relief he requests and the facts that support his request.

1

attacked and stabbed by four inmates at Menard on or around April 14, 2024. *Id*. at 1. He sustained injuries to his head, eyes, shoulder, back, and collarbone. *Id*. at 11-12. Plaintiff was denied all medical treatment for his injuries. *Id*. at 1-20.

Just before the attack, Plaintiff reported fear for his safety to C/O Delaney in Menard's North 2, 7 Gallery walkway. *Id*. at 12. He explained that C/O Wilson spread a rumor among inmates in Menard's North 2 Housing Unit by saying he caught Plaintiff engaging in sexual acts with a homosexual male inmate. This was not true. Nonetheless, gang members believed the rumor and began to harass and threaten him. Delaney told Plaintiff to "man up" and "stop fucking being a faggot and to get out of his face." *Id*. at 13. Plaintiff asked to speak with Sergeant Berry or Sergeant Jones to report the ongoing harassment by gang members. Delaney and Wilson both denied the request. They said "if their names or this faggot shit is brought up in any way," Plaintiff would be fired from his detail job and jumped by said inmates. *Id*.

Plaintiff then filed an emergency grievance with Warden Anthony Wills. He reported fear for his safety in light of Wilson's rumor, Delaney's threat, and the imminent risk of an inmate-on-inmate assault. Plaintiff received no response to the emergency grievance. Wilson came to his cell and held up the emergency grievance to let Plaintiff know he was aware of it. *Id*.

Delaney and Wilson then let Plaintiff out of his cell for rec yard. While Plaintiff turned his back to the open cell door and prepared to exit, four inmates entered the cell and used a "jail made knife" to stab and stomp him in the back, face, and legs repeatedly. As the inmates attacked Plaintiff, Delaney and Wilson turned their backs and walked away. Plaintiff lost consciousness during the assault and was left bleeding for hours. *Id*.

When he finally regained consciousness, Plaintiff asked Wilson for medical treatment. Wilson told Plaintiff to "keep his name out of his faggot ass reports" and again walked away.

While looking at Delaney, Wilson asked Plaintiff, "You now need my help after you tried to write me up?" Delaney added, "I don't see anything wrong with him. Do you, Wilson?" The officers laughed and left Plaintiff to "bleed out." *Id*. Plaintiff had to dress his own wounds using toilet tissue and ripped sheets. He was forced to wait for help. *Id*.

Following shift change, Plaintiff reported the assault to C/O John Doe 1 and requested medical treatment for his injuries and blood loss. *Id*. at 15-16. Doe 1 asked, "How do [I] know that [you] ain't a faggot and stab [your] self?" *Id*. at 16. Doe 1 then instructed Plaintiff to wait and ask Nurse Elizabeth for medical care when she made rounds later that night.

Close to midnight, Plaintiff noticed Nurse Morgan Giacomo making rounds with several officers. He called out to the nurse for help treating his stab wounds, but Nurse Giacomo continued walking past his cell and did not return. Plaintiff summoned the "midnight" C/O John Doe 2 to his cell. He showed the officer his stab wounds and begged for treatment. Doe 2 told him that a sergeant was already aware of his issues but instructed the staff not to "fuck with" Plaintiff. The midnight shift officers would not let Nurse Elizabeth see Plaintiff or take him to the health care unit for treatment. *Id*. at 16-17.

Wilson placed Plaintiff on "deadlock" for the next few weeks. *Id*. at 17. He was denied in-house movement and showers. Delaney would not let Plaintiff speak with a sergeant or lieutenant about his attack, injuries, or denial of medical care.

Sometime in April or May 2024, a "rookie" correctional officer opened his cell door and allowed Plaintiff to report everything. In response to this report, an in-house sergeant moved Plaintiff to a housing unit next door, North 1, 8 Gallery, Cell 805. Before long, Wilson's rumor spread to gang members in the new housing unit, and these inmates warned Plaintiff to move voluntarily or be removed in a body bag. *Id*. at 17. Plaintiff told a lieutenant that he feared for his

life, and he was placed on deadlock in Cell 805 until he was moved back to North 2, 7 Gallery, Cell 251 sometime in October 2024. *Id*. at 18.

During the entire ordeal, Plaintiff was denied medical treatment for his stab wounds and other injuries. He was forced to dress his own wounds and take all possible steps to prevent infection. He submitted numerous sick call slips, but was not called to the health care unit for treatment between April 14, 2024 and December 21, 2024.[3]

## Preliminary Dismissals

Plaintiff alleges misconduct by individuals who are not identified as defendants in the Complaint, including Nurse Elizabeth, sergeants, lieutenants, and others. When a plaintiff does not identify individuals as defendants in the case caption or list of defendants, the Court will not treat them as such. FED. R. CIV. P. 10(a); *Myles v. United States*, 416 F.3d 551, 551-52 (7th Cir. 2005) (defendant must be "specif[ied] in the caption"). Therefore, all non-parties are considered dismissed without prejudice from this case.

## Discussion

The Court designates the following claims in the *pro se* Complaint:

**Count 1:**  First Amendment claim against C/O Wilson and C/O Delaney for retaliating against Plaintiff for filing a grievance against the officer(s) by inciting an inmate attack against him on or around April 14, 2024 and denying him medical treatment for his injuries, placing him on deadlock, denying him movement and showers, and prohibiting him from reporting the incident.

**Count 2:**  Eighth Amendment claim against C/O Wilson and C/O Delaney for inciting an inmate attack on Plaintiff and then failing to intervene and protect him from injury on or around April 14, 2024.

**Count 3:**  Eight Amendment claim against Warden Wills for failing to take steps to curb officers from inciting violence at Menard Correctional Center.

**Count 4:**  Eighth Amendment claim against C/O Wilson, C/O Delaney, Nurse Giacomo, C/O John Doe 1, and C/O John Doe 2 for denying Plaintiff

---

[3] This date is presumably incorrect because it occurred five weeks *after* the date Plaintiff filed this Complaint.

>      medical care for the injuries he sustained in the inmate attack on or around April 14, 2024.
>
> **Count 5:**   Illinois state law assault and/or battery claim against C/O Wilson and C/O Delaney for inciting the inmate attack against Plaintiff on or around April 14, 2024.

Any other claim mentioned but not addressed herein is considered dismissed without prejudice as inadequately pled. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### Count 1

To state a colorable claim of retaliation under the First Amendment, a plaintiff must set forth allegations suggesting that: (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation likely to deter future First Amendment activity; and (3) his First Amendment activity was "at least a motivating factor" in each defendant's decision to take retaliatory action against him. *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020) (citation omitted). Plaintiff alleges that after he complained about C/O Wilson spreading a rumor that endangered his safety, C/O Wilson and C/O Delaney retaliated against him by inciting a brutal inmate attack, denying him treatment for his injuries, placing him on deadlock, and prohibiting him from reporting the incident. These allegations are sufficient to articulate a retaliation claim against both defendants. Count 1 will proceed against C/O Wilson and C/O Delaney.

### Count 2

The Eighth Amendment imposes a duty on prison officials to take reasonable steps to ensure the safety of inmates. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). This includes steps to protect inmates from violence at the hands of other inmates. *Id*. at 833; *Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006). When a plaintiff brings a failure-to-protect claim against prison officials, the plaintiff must set forth allegations indicating he was incarcerated under conditions posing a substantial risk to his health or safety, and each defendant responded with deliberate

5

indifference. *Id*. He must identify a specific, impending, and substantial threat to his safety that each defendant deliberately disregarded. *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996).

Plaintiff alleges that C/O Wilson and C/O Delaney incited an inmate attack against him, by spreading a rumor that endangered his safety, opening the door to his cell, and allowing four inmates to enter with a knife and attack him while the defendants turned and walked away. Given these allegations, Count 2 will proceed against C/O Wilson and C/O Delaney.

### Count 3

The Eighth Amendment claim against Warden Wills hinges on his supervisory role over these officers. Plaintiff faults the warden for failing to take steps necessary to curb the officers' misconduct in inciting violence at the prison. The warden's supervisory role alone provides no grounds for a claim against him because the doctrine of *respondeat superior* is not recognized under § 1983. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). Rather, § 1983 lability requires personal involvement in or responsibility for a constitutional deprivation. *Id*.

There is no indication the warden ever found out about the incidents described herein as the emergency grievance addressed to him was intercepted by C/O Wilson. Because the allegations do not suggest that the warden had any knowledge of or involvement in any incidents described in the Complaint, Count 3 will be dismissed without prejudice against Warden Wills.

### Count 4

An Eighth Amendment claim for the denial of medical care arises where prison officials respond to an inmate's objectively serious medical condition with deliberate indifference. *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). Plaintiff alleges that C/O Wilson, C/O Delaney, Nurse Giacomo, C/O John Doe 1, and C/O John Doe 2 were all aware of his stab wounds and

injuries, his significant blood loss, and his need for medical treatment, but denied it. As a result, he had to dress his own wounds and take all steps available to him to prevent infection. As such, Plaintiff's medical deliberate indifference claim will proceed against C/O Wilson, C/O Delaney, Nurse Giacomo, C/O Doe 1, and C/O Doe 2.

### Count 5

The Court may exercise supplemental jurisdiction over the Illinois claims for assault and battery because the claims arise from the same facts that support the federal constitutional claims against the defendants. *See* 28 U.S.C. § 1367(a). Under Illinois law, "[w]ith respect to civil liability, an assault can be defined as an intentional, unlawful offer of corporal injury by force, or force unlawfully directed, under such circumstances as to create a well-founded fear of imminent peril, coupled with the apparent present ability to effectuate the attempt if not prevented." *Parrish v. Donahue*, 443 N.E.2d 786, 788 (1982). A "claim of assault must include an allegation of a reasonable apprehension of an imminent battery." *McNeil v. Carter*, 742 N.E.2d 1277, 1281 (2001). The elements of a battery include "an intentional act on the part of the defendants" and "a resulting offensive contact with the plaintiff's person." *Id*.

According to the allegations, C/O Wilson and C/O Delaney threatened Plaintiff with an inmate attack for reporting the officers and allowed four inmates to enter Plaintiff's cell and stab him as they turned and walked away. Based on these allegations, the assault claim in Count 5 survives screening against both defendants. However, the battery claim implicates the four inmates who are not parties to this action, not the officers. Accordingly, the battery claim in Count 5 will be dismissed without prejudice.

### Identification of Unknown Defendants

Warden Anthony Wills is named in an official capacity and is responsible for responding to discovery aimed at identifying the unknown defendants: C/O John Doe 1 and C/O John Doe 2. *See Rodriguez*, 577 F.3d at 832 (7th Cir. 2009); FED. R. CIV. P. 21. Guidelines for discovery will be set by the undersigned judge after the warden enters an appearance. Once the name of the unknown defendants are discovered, Plaintiff shall file a motion to substitute the newly identified defendant in place of the generic designations in the case caption and throughout the Complaint.

### Affidavit

Plaintiff filed an Affidavit of Anthony Reynolds (Doc. 14). There is no need to submit evidence in the form of witness affidavits at this juncture, and Plaintiff should refrain from further unnecessary filings. No additional, evidence, arguments, motions, or documents are needed at this time. *See* Notice of Plaintiff (below).

### Disposition

The Complaint (Doc. 1) survives screening under 28 U.S.C. § 1915A, and the following claims will proceed against the below-listed defendants:

- **COUNTS 1, 2,** and **5** (assault claim only) will proceed against **C/O WILSON** and **C/O DELANEY**, in their individual capacities;

- **COUNT 4** will proceed against **C/O WILSON, C/O DELANEY, NURSE GIACOMO, C/O JOHN DOE 1** (once identified), and **C/O JOHN DOE 2** (once identified), in their individual capacities;

- **WARDEN ANTHONY WILLS** remains named as a defendant in an official capacity for purposes of identifying the unknown defendants, C/O John Doe 1 and 2.

**ALL OTHER CLAIMS**, including **COUNTS 3** and **COUNT 5 (battery claim only)**, are **DISMISSED** without prejudice for failure to state a claim for relief, and **WARDEN ANTHONY WILLS** is **DISMISSED** without prejudice from this action, in his individual capacity.

The Clerk shall prepare for **WARDEN ANTHONY WILLS**, in his official capacity only, and **C/O WILSON, C/O DELANEY, NURSE GIACOMO** and **C/O JOHN DOE 1 and 2** (once identified), in their individual capacities only: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with that Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244 and Local Rule 8.2, Defendants should only respond to the issues stated in this Merit Review Order. Warden Wills need only file an appearance.**

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. §1915, he will be required to pay the full amount of the costs, even though he was granted *in forma pauperis* status. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of

Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**The Clerk's Office is DIRECTED to UPDATE the spelling of "C/O DELIANE" to "C/O DELANEY" in CM/ECF consistent with all references to this defendant in the body of the Complaint.**

**IT IS SO ORDERED.**

**DATED:   July 15, 2025**                    *s/ Staci M. Yandle*
                                              **STACI M. YANDLE**
                                              **United States District Judge**

### Notice to Plaintiff

Once identified, the Court will take the necessary steps to notify the Defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, Defendants will enter appearances and file Answers to your Complaint. It will likely take at least **60 days** *from the date they are served with this lawsuit* to receive the Answers, but it is entirely possible that it will take **90 days** or more. When all Defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' attorneys have filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.